# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VALLEY FORGE INSURANCE COMPANY and THE CONTINENTAL INSURANCE COMPANY** | **CASE NO:  6:25-cv-00167** |
| **v.** | **JUDGE _____** |
| **MAGNOLIA RIVER SERVICES, INC. AND CENTERPOINT ENERGY RESOURCES CORPORATION** | **MAG _____** |

## COMPLAINT FOR DECLARATORY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, come Valley Forge Insurance

Company ("VFIC") and The Continental Insurance Company ("CIC"), and for their Complaint for

Declaratory Judgment respectfully represent as follows:

## NATURE OF ACTION

1.      VFIC and CIC file this Complaint against Magnolia River Services, Inc.

("Magnolia") and CenterPoint Energy Resources Corporation ("CenterPoint").   VFIC and CIC

seek, and are entitled to, a judicial declaration that VFIC and CIC have no duty to defend or

indemnify Magnolia or CenterPoint for claims for damages arising out of consolidated lawsuits in

the 16th Judicial District Court for the Parish of Iberia, captioned *Gary Louis Simon v. CenterPoint

Energy Resources, Inc.*; *Anthony Isaac Zamora, et al. v. CenterPoint Energy Resources

Corporation*; *Martha Berard, et al. v. CenterPoint Energy Resources Corporation*; *Gilbert Viator

v. CenterPoint Energy Resources*; and *Jake Smith and Jennifer Kling v. CenterPoint Energy

Resources Corporation* (collectively "the Consolidated Lawsuits").[1]

---

[1] True and correct copies of the Consolidated Lawsuits are attached hereto *in globo* as Exhibit A.

2.      VFIC issued Commercial General Liability Policy No. 5093259512 to Magnolia for the policy period April 1, 2021 to April 1, 2022 ("VFIC CGL Policy").  CIC issued Paramount Excess and Umbrella Policy No. 602054257 to Magnolia for the policy period April 1, 2021 to April 1, 2022 ("CIC Excess Policy") (collectively "the Policies").[2]

3.      CenterPoint is not a named insured on either policy, but alleges that it is entitled to additional insured coverage pursuant to a contract entered with Magnolia to provide inspection and construction services ("the CenterPoint Contract").

4.      Magnolia and CenterPoint seek insurance coverage for the Consolidated Lawsuits under the VFIC CGL Policy and CIC Excess Policy, and VFIC is presently defending both Magnolia and CenterPoint, strictly subject to Reservations of Rights.

5.      The claims asserted in the Consolidated Lawsuits arise out of the alleged failure of Magnolia and/or CenterPoint to render professional services, and are excluded from insurance coverage under multiple independent exclusions and provisions of the Policies.

6.      On separate and independent grounds, VFIC and CIC seek a judicial declaration that the defense, indemnity and additional insured provisions contained in the CenterPoint Contract are null, void and unenforceable as a matter of law pursuant to Louisiana Revised Statute § 9:2780.1, the Louisiana Construction Anti-Indemnity Act ("LAIA").  Pursuant to the LAIA, the contractual obligations set forth in the CenterPoint Contract are in direct violation of the public policy of the State of Louisiana and contrary to law.

7.      Despite the lack of insurance coverage and the absolute nullity of the CenterPoint Contract, VFIC continues to incur disputed defense costs and fees.  VFIC requests that the Court render a money judgment in favor of VFIC for recovery of all amounts paid in defense costs and

---

[2] True and correct copies of the Policies, with premium information redacted, are attached hereto as Exhibit B and Exhibit C, respectively.

fees associated with the Consolidated Lawsuits.  To date, VFIC has paid and is in the process of paying more than $1,400,000 in defense costs and fees, and these amounts continue to accrue.

## JURSIDICTION & VENUE

8.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, 28 U.S.C. § 2202, and Rule 57 of the Federal Rules of Civil Procedure.  An actual controversy exists between the Parties and this matter is ripe for adjudication.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship between the opposing Parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claims at issue occurred in this District, and specifically in Iberia Parish.

## PARTIES

11.     Plaintiff, Valley Forge Insurance Company (VFIC) is a corporation organized and existing under the laws of the State of Pennsylvania, and with its principal place of business in Chicago, Illinois.

12.     Plaintiff, The Continental Insurance Company (CIC) is a corporation organized and existing under the laws of the State of Pennsylvania, and with its principal place of business in Chicago, Illinois.

13.     Defendant, Magnolia River Services, Inc. (Magnolia) is a corporation organized and existing under the laws of the State Alabama, and with its principal place of business in Decatur, Alabama.

**14.**     Defendant, CenterPoint Energy Resources Corporation (CenterPoint) is a corporation organized and existing under the laws of the State of Texas, and with its principal place of business in Houston, Texas.

## FACTUAL BACKGROUND AND ALLEGATIONS

**15.**     On or about May 26, 2021, Magnolia and CenterPoint executed the CenterPoint Contract.  Therein, Magnolia agreed to provide certain inspection and other services for gas line construction and replacement work being performed in conjunction with MDR Group Construction, LLC ("MDR").[3]  Specifically, the project involved removing existing gas lines and installing 2" low pressure natural gas main lines and 1" natural gas service lines along LA 675 (Hopkins Street) in New Iberia.

**16.**     Among other obligations, Magnolia contracted to perform the following services on the construction site: (1) confirm federal, state, local and utility safety regulations and policies were being implemented on the gas line construction project; (2) verify proper permits correlated with the jobsite; (3) maintain the accuracy of "utility locates," or the identification of the location of pre-existing underground utilities in the construction area; (4) review and verify calibration certificates; (5) review and verify excavations are proper size and depth, and integrity and clearance from other facilities is maintained; (6) review and verify gas line installation depth and location is maintained, while evaluating use of protective sleeves, proper vents, spacers and fittings, and compliance with manufacturer specifications; (7) review and verify proper polyethylene pipe fusion procedures and tracer wire installation and connections; (8) inspect condition of existing tie-in excavations; (9) confirm testing of pressures, durations, and current

---

[3] A true and correct copy of the CenterPoint Contract is submitted separately pursuant to a Motion to File Exhibit Under Seal and is identified as Exhibit D.

calibration; (10) confirm CenterPoint's gas line purging process is followed, along with all tapping and stopping operations, as well as bypass and/or bagging operations; and (11) confirm that abandonment, removal or decommissioning of facilities and/or lines are in accordance with CenterPoint standards.

17.     Magnolia and MDR were further required to interpret and implement the construction and engineering specifications of the CenterPoint project engineers for the new construction, while taking into account the pre-existing underground structures and utilities, as well as active gas leaks which are monitored by geospatial information.

18.     CenterPoint personnel testified that Magnolia inspectors were hired to supplement CenterPoint's own in-house inspection staff.  CenterPoint inspectors were generally required to have ten to fifteen years of experience on a construction or service crew and in-depth knowledge of the governmental and safety regulations, and engineering requirements set forth in CenterPoint's construction and service manuals.  CenterPoint personnel testified that Magnolia was retained to perform the same role as CenterPoint's in-house inspection staff.

19.     The Consolidated Lawsuits arise out of an explosion that allegedly occurred on July 29, 2021 at the gas line construction and replacement work site.  The Consolidated Lawsuit plaintiffs allege that during underground excavation work on Hopkins Street in the City of New Iberia, individuals employed by MDR's subcontractor struck an underground gas line, which caused a gas leak, fire and subsequent explosion.  The Consolidated Lawsuit plaintiffs allege that CenterPoint and Magnolia's negligence was a cause of the explosion and their resulting damages.

20.     VFIC issued the VFIC CGL Policy to Magnolia for the April 1, 2021 to April 1, 2022 policy period, with liability limits of $1,000,000 per occurrence.

21.    CIC issued the CIC Excess Policy to Magnolia for the April 1, 2021 to April 1, 2022 policy period, with liability limits of $10,000,000 each incident, over a retention amount of $10,000 for each claim.

22.    While Magnolia sought a defense from VFIC, Magnolia also demanded defense and indemnity from its professional liability insurer, Evanston Insurance Company ("Evanston"). Evanston issued Architects and Engineers Professional Liability Policy MKLV7PLOOO4639 to Magnolia for the April 1, 2021 to April 1, 2022 policy period, with liability limits of $5,000,000 each claim.

23.    Magnolia was also insured pursuant to Excess Professional Liability Policy LHZ788245 issued by RSUI Insurance Company for the April 1, 2021 to April 1, 2022 policy period, with liability limits of $5,000,000 each claim.

24.    Evanston retained counsel to represent Magnolia in the Consolidated Lawsuits. Upon information and belief, neither Evanston nor RSUI issued a reservation of rights to Magnolia.

25.    On April 27, 2022, VFIC and CIC issued a Reservation of Rights to Magnolia detailing the terms and provisions of the Policies which demonstrate that the claims for damages asserted in the Consolidated Lawsuits are not afforded insurance coverage under the Policies.

26.    Strictly subject to the Reservation of Rights, VFIC agreed to participate in Magnolia's defense, along with Evanston.

27.    CenterPoint issued a demand to Magnolia and its insurers for defense and indemnity pursuant to the CenterPoint Contract.

28.     On April 18, 2022, VFIC and CIC issued a Reservation of Rights to CenterPoint detailing the terms and provisions of the Policies which demonstrate that the claims for damages asserted in the Consolidated Lawsuits are not afforded insurance coverage under the Policies.

29.     Strictly subject to the Reservation of Rights, VFIC agreed to participate in CenterPoint's defense.

### The VFIC CGL Policy Does Not Afford Insurance Coverage.

19.     The VFIC CGL Policy Insuring Agreement provides in pertinent part:

*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*
*Insuring Agreement*
*We will pay those sums that the **Insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the **Insured** against any suit seeking those **damages**. However, we will have no duty to defend the **Insured** against any suit seeking **damages** for **bodily injury** or **property damage** to which this insurance does not apply.*

20.     VFIC has no duty to defend or indemnify Magnolia or CenterPoint as the claims for damages asserted in the Consolidated Lawsuits are excluded from insurance coverage under the VFIC CGL Policy pursuant to the *Inspection, Appraisal, and Survey Companies Exclusion Endorsement*, the *Engineers, Architects or Surveyors Professional Liability Exclusion Endorsement*, the *Contractors – Professional Liability Exclusion Endorsement*, and the *Construction Management Errors and Omissions Exclusion Endorsement*.

21.     Insurance coverage under the VFIC CGL Policy is excluded pursuant to the terms and provisions of the *Inspection, Appraisal, and Survey Companies Exclusion Endorsement* which provides in pertinent part:

*__Inspection, Appraisal and Survey Companies Exclusion Endorsement__*
*__CNA74770XX (1/15):__*
*This endorsement modifies insurance provided under the following:*
*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*It is understood and agreed that under **COVERAGES, Coverage A Bodily Injury And Property Damage Liability**…, the paragraphs entitled **Exclusions**, are amended to add the following exclusion:*

*This insurance does not apply to **bodily injury**, **property damage** or **personal and advertising injury** for which the Insured may be held liable because of the rendering of or failure to render **professional services**.*

*As used herein, **professional services** means claim, investigation, adjustment, engineering, inspection, appraisal, survey or audit services*

22.    Insurance coverage under the VFIC CGL Policy is excluded pursuant to the terms

and provisions of the *Engineers, Architects or Surveyors Professional Liability Exclusion*

*Endorsement* which provides in pertinent part:

> ***Engineers, Architects or Surveyors Professional Liability Exclusion Endorsement CNA74980XX (1/15):***
> *This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART*
>
> *It is understood and agreed that under **COVERAGES, Coverage A Bodily Injury And Property Damage Liability**…, the paragraphs entitled **Exclusions**, are amended to add the following exclusion:*
>
> *This insurance does not apply to **bodily injury**, **property damage** or **personal and advertising injury** arising out of the rendering of or failure to render any professional services by the **Named Insured** or any engineer, architect or surveyor who is either employed by the **Named Insured** or performing work on the **Named Insured**'s behalf in such capacity. Professional services include:*
>
> *A. the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and*
>
> *B. supervisory, inspection, architectural or engineering activities.*

23.    Insurance coverage under the VFIC CGL Policy is excluded pursuant to the terms

and provisions of the *Contractors – Professional Liability Exclusion Endorsement* which provides

in pertinent part:

> ***Contractors – Professional Liability Exclusion Endorsement  CNA74801XX (01/15):***
> *This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*It is understood and agreed that under **COVERAGES, Coverage A Bodily Injury And Property Damage Liability...**, the paragraphs entitled **Exclusions**, are amended to add the following exclusion:*

*This insurance does not apply to **bodily injury**, **property damage** or **personal and advertising injury** arising out of the rendering of or failure to render **professional services** by the **Named Insured** or on the **Named Insured's** behalf.*

*As used herein, **professional services** means:*

*A. engineering, architectural or surveying services to others in the **Named Insured's** capacity as an engineer, architect or surveyor; or*

*B. providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work the **Named Insured** performs.*

*Such **professional services** include:*

*1. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and*

*2. supervisory or inspection activities performed as part of any related architectural or engineering activities.*

24.    Insurance coverage under the VFIC CGL Policy is excluded pursuant to the terms and provisions of the *Construction Management Errors and Omissions Exclusion Endorsement* which provides in pertinent part:

**<u>Construction Management Errors and Omissions Exclusion Endorsement CNA74776XX (01/15):</u>**

*This endorsement modifies insurance provided under the following:*
*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*It is understood and agreed that under **Coverages, Coverage A Bodily Injury And Property Damage Liability...**, the paragraphs entitled **Exclusions**, are amended to add the following:*

*This insurance does not apply to **bodily injury**, **property damage** or **personal and advertising injury** arising out of:*

*1. the preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by an architect, engineer or surveyor performing services on a project on which the **Named Insured** serves as construction manager; or*

2. *inspection, supervision, quality control, architectural or engineering activities done by or for the* **Named Insured** *on a project on which the* **Named Insured** *serves as construction manager.*
*However, this exclusion does not apply to* **bodily injury** *or* **property damage** *due to construction or demolition work done by the* **Named Insured**, *the* **Named Insured's** **employees** *or the* **Named Insured's** *subcontractors.*

25.     These provisions demonstrate that insurance coverage is excluded under the VFIC CGL Policy for the claims for damages asserted against Magnolia and CenterPoint in the Consolidated Lawsuits.

**The CIC Excess Policy Does Not Afford Coverage.**

30.     The CIC Excess Policy does not afford insurance coverage for the claims for damages asserted in the Consolidated Lawsuits as the CIC Insuring Agreement is not satisfied. The CIC Excess Policy does not provide coverage for any loss not covered by the VFIC CGL Policy.

31.     The CIC Excess Policy provides in pertinent part:

*The Insurer will pay on behalf of the* **Insured** *those* **damages** *in excess of the applicable* **underlying limits**. *Coverage hereunder will attach only after the full amount of the applicable* **underlying limits** *have been exhausted through payment in legal currency of covered loss under all applicable* **underlying insurance** *and to which this Coverage A applies.*

*Coverage A under this Policy will then apply in conformance with the provisions of the applicable* **underlying insurance** *except for the premium, limits of insurance, deductible, retentions, or any defense obligations and any other terms and conditions specifically set forth in this Policy.*

*Upon exhaustion of the applicable* **underlying limits**, *the Insurer shall only pay for* **damages** *in excess of the applicable* **underlying limits**. *This Coverage A does not provide coverage for any loss not covered by the applicable* **underlying insurance**[4] *except and to the extent that such loss is not paid under the applicable underlying insurance solely by reason of the exhaustion of the applicable* **underlying limits** *through payment of loss thereunder.*

The CIC Excess Policy defines **underlying insurance** as follows:

---

[4] Emphasis added.

> ***Underlying insurance*** *means policies of insurance listed in the Schedule of* ***Underlying Insurance*** *including renewal or replacement of such insurance which is neither more restrictive nor more broad than that listed in the aforementioned Schedule of* ***Underlying Insurance****.*

The only pertinent policy identified in the Schedule of Underlying Insurance is the VFIC CGL

Policy.

32.    Insurance coverage under the CIC Excess Policy is also excluded pursuant to the

*Underlying Insurance Coverage Limitation Endorsement* which provides in pertinent part:

> *This endorsement modifies insurance provided under the following:*
> *PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY*
> *...*
> *It is understood and agreed as follows:*
> *If this endorsement is attached to the:*
> A.  *PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY, then under* **EXCLUSIONS***, the section entitled* ***Coverage B – Umbrella Liability Coverage Exclusions****...*
>  *it is amended with the addition of the following new exclusion:*
>
> ***Underlying Insurance Coverage Limitation***
> *Notwithstanding anything to the contrary, this policy does not provide broader coverage than that which is provided by any* ***underlying insurance****.*
> *In the event of any difference between:*
> a.  *exclusions, restrictions, limiting terms or conditions in this policy and*
> b.  *exclusions, restrictions, limiting terms or conditions in the* ***underlying insurance****;*
> *addressing the same general risk or hazard, then the more restrictive provision shall apply.*

33.    Insurance coverage under the CIC Excess Policy is also excluded pursuant to the

terms and provisions of the *Contractors Limitation Endorsement – Excess and Umbrella Liability*

which provides in pertinent part:

> *This endorsement modifies insurance provided under the following:*
> *PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY*
> *...*
> *It is understood and agreed as follows:*
> *Under* **EXCLUSIONS***, the section entitled* ***Coverage A – Excess Follow Form Liability and Coverage B – Umbrella Liability Exclusions*** *is amended by the addition of the following new exclusion:*

***Architects and Engineers Professional Services***
*any liability of the **Insured**, or any other person or entity acting on the **Insured's** behalf, arising out of any actual or alleged rendering of, or failure to render, professional services by an architect, engineer, surveyor, landscape architect, or soil or subsoil analyst.*

*As used in this endorsement, professional services includes, but is not limited to:*
   a. *feasibility studies, cost estimates, or soil tests;*
   b. *preparing, approving, or failing to prepare or approve, maps, plans, opinions, reports, surveys, change orders, field orders, designs, drawings, shop drawings or specifications;*
   c. *supervisory, inspection, architectural or engineering activities; or*
   d. *project or construction management services.*

*However, professional services do not include services within construction means, methods, techniques, sequences and procedures employed by the Insured in connection with the Insured's operations in the Insured's capacity as a construction contractor.*

**34.**    Insurance coverage under the CIC Excess Policy is also pursuant to the

*Construction Management Errors and Omissions Exclusion Endorsement* which provides in

pertinent part:

> *This endorsement modifies insurance provided under the following:*
> *PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY*
> *…*
> *It is understood and agreed that if this endorsement is attached to the:*
> > ***35.** PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS**, the section entitled **Coverage A – Excess Follow Form Liability and Coverage B – Umbrella Liability Exclusions**…*
> *it is amended by the addition of the following new exclusion:*

> ***Construction Management***
> *any actual or alleged liability arising out of:*
> > a. *the preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications by any architect, engineer or surveyor performing services on a project on which the **Named Insured** serves as construction manager; or*
> > b. *inspection, supervision, quality control, architectural or engineering activities done by or for the **Named Insured** on a project on which the **Named Insured** serves as a construction manager.*
> *However, this exclusion does not apply to bodily injury or property damage due to construction or demolition work done by the Named Insured, its employees, or any subcontractor hired by the Named Insured.*

12

36.     These provisions demonstrate that insurance coverage is excluded under the CIC Excess Policy for the claims asserted against Magnolia and CenterPoint in the Consolidated Lawsuits.

### CenterPoint Is Not Afforded Insurance Coverage.

37.     CenterPoint demanded defense, indemnity and additional insured coverage under the Policies.

38.     The VFIC CGL Policy contains the following pertinent *Blanket Additional Insured* provision:

> ***Blanket Additional Insured – Owners, Lessees or Contractors with Products-Completed Operations Coverage Endorsement CNA75079XX (10/16):***
> *...*
> ***WHO IS AN INSURED*** *is amended to include as an **Insured** any person or organization whom you are required by **written contract** to add as an additional insured on this **coverage part**, but only with respect to liability for **bodily injury**, **property damage** or **personal and advertising injury** arising out of **your work** that is subject to such **written contract**.*

> III. *Subject always to the terms and conditions of this policy, including the limits of insurance, the Insurer will not provide such additional insured with:*
>> A. *coverage broader than required by the **written contract**; or*
>> B. *a higher limit of insurance than required by the **written contract**.*

> IV. *The insurance granted by this endorsement to the additional insured does not apply to **bodily injury**, **property damage**, or **personal and advertising injury** arising out of:*
>> A. *the rendering of, or the failure to render, any professional architectural, engineering, or surveying services, including:*
>>> 1. *the preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and*
>>> 2. *supervisory, inspection, architectural or engineering activities; or*

>> B. *any premises or work for which the additional insured is specifically listed as an additional insured on another endorsement attached to this coverage part.*
> *...*
> *Any coverage granted by this endorsement shall apply solely to the extent permissible by law.*

26.     The VFIC CGL Policy does not afford insurance coverage to CenterPoint because the claims for damages asserted in the Consolidated Lawsuits do not arise out of Magnolia's work.

27.     The VFIC CGL Policy does not afford insurance coverage to CenterPoint on the grounds that coverage is otherwise excluded under the VFIC CGL Policy.

28.     The VFIC CGL Policy does not afford insurance coverage to CenterPoint for the claims for damages in the Consolidated Lawsuits on the grounds that they arise out of the rendering of, or the failure to render, professional services as set forth in the *Blanket Additional Insured* Endorsement.

29.     The CIC Excess Policy does not afford insurance coverage where, as here, the VFIC CGL Policy does not afford insurance coverage.  Further, insurance coverage under the CIC Excess Policy is excluded on multiple, independent grounds.

30.     These provisions demonstrate that CenterPoint is not afforded insurance coverage as an additional insured, or otherwise, under the VFIC CGL Policy or the CIC Excess Policy for the claims asserted in the Consolidated Lawsuits.

**The CenterPoint Contract is an Absolute Nullity.**

31.     Pursuant to the LAIA, the contractual obligations set forth in the CenterPoint Contract are in direct violation of the public policy of the State of Louisiana and are null, void and unenforceable as a matter of law.

32.     The CenterPoint Contract contains the following provisions, which refer to Magnolia as "Vendor" and CenterPoint as "Company":[5]

*10. INSURANCE*
*10.1 Insurance and Indemnification*
*10.1.1 Prior to beginning Work, <u>Vendor will obtain</u>, maintain, <u>and pay for such insurance</u> as may be required by the Contract and to effect the provisions of the Indemnification section herein. The coverage of such policies is set forth below.*

---

[5] Emphasis added.

…

### 10.3 Required Insurance and Limits of Liability

*10.3.1 Before beginning the Work and throughout the term of this Contract, Vendor shall obtain and maintain in force and effect, __at Vendor's sole expense__, insurance of the following types and amounts from insurance companies authorized to engage in the business of insurance in the state(s) in which Work will be performed, and rated by a Best's A – VII or better:*

#### 10.3.1.3 Commercial General Liability Insurance

*10.3.1.3.1 Vendor shall carry Commercial General Liability Insurance, including coverage for bodily injury and property damage, personal and advertising injury, the products-completed operations hazard, and insured contracts, applicable in all states in which the Work is to be performed, on a form no less broad that that promulgated by the Insurance Services Office dated 2004 or thereafter, and with limits of not less than:*
*10.3.1.3.2 Each Occurrence $1,000,000*

…

#### 10.3.1.5 Excess or Umbrella Liability Insurance

*10.3.1.5.1 Vendor shall carry Excess or Umbrella Liability Insurance applying excess of Employer's Liability Insurance, Commercial General Liability Insurance, and Business Automobile Liability Insurance with limits of not less than $5,000,000 per occurrence and in the aggregate.*

### 10.4 CenterPoint Energy, Inc. To Be Named An Additional Insured

*10.4.1 __To the extent allowed by law__, the Commercial General Liability Insurance, Business Automobile Liability Insurance, Excess or Umbrella Insurance, and Aircraft Liability and Hull Insurance, as required above, shall be endorsed to provide that CenterPoint Energy, Inc., together with its owned or controlled subsidiaries and affiliates, and their respective directors, officers and employees (collectively, "the Additional Insureds"), are added as additional insureds for liability arising out of the Work, with __coverage not limited to liability caused by Vendor or Vendor's fault, and providing coverage for the Additional Insureds' fault__ or vicarious liability no less broad than one or the other of the following alternatives: (1) the coverage afforded to the named insured under the policy for liability arising out of the Work; or (2) the coverage afforded by the inclusion of both Insurance Services Office Additional Insured Endorsements CG 20 33 07 04 and CG 20 37 07 04.*

**33.**    The CenterPoint Contract meets the definition of "construction contract" set forth in the LAIA and its interpreting jurisprudence.  Further, CenterPoint contractually obligated Magnolia to indemnify and obtain insurance coverage to indemnify CenterPoint for CenterPoint's

own negligence and fault, and required Magnolia to pay for such insurance coverage at its sole expense.

34.    Pursuant to the express provisions of Louisiana Revised Statute § 9:2780.1 and Louisiana jurisprudence, the defense, indemnity and additional insured obligations in the CenterPoint Contract are null, void and unenforceable as a matter of law.

## COUNT I

### For A Declaration That Insurance Coverage Is Expressly Excluded Under The Unambiguous Terms Of The VFIC CGL Policy.

23.    VFIC and CIC re-allege and incorporate by reference all of their previous allegations.

24.    The claims for damages asserted in the Consolidated Lawsuits are excluded from insurance coverage under the VFIC CGL Policy pursuant to the *Inspection, Appraisal, and Survey Companies Exclusion Endorsement,* the *Engineers*, *Architects or Surveyors Professional Liability Exclusion Endorsement*, the *Contractors – Professional Liability Exclusion Endorsement*, and the *Construction Management Errors and Omissions Exclusion Endorsement.*

25.    Application of any one of these clear and unambiguous provisions excludes insurance coverage for all of the claims for damages asserted in the Consolidated Lawsuits against Magnolia and CenterPoint.

26.    VFIC and CIC are entitled to and respectfully request declaratory judgment that insurance coverage is excluded under the VFIC CGL Policy for the claims for damages in the Consolidated Lawsuits against Magnolia and CenterPoint.

27.    VFIC and CIC are entitled to and respectfully request declaratory judgment that VFIC has no duty to defend or indemnify Magnolia or CenterPoint for the claims for damages in the Consolidated Lawsuits.

## COUNT II

**For A Declaration That The CIC Excess Policy Does Not Afford Insurance Coverage.**

**28.**     VFIC and CIC re-allege and incorporate by reference their previous allegations.

**29.**     The CIC Excess Policy does not afford insurance coverage for the claims asserted in the Consolidated Lawsuits as the CIC Excess Policy Insuring Agreement is not satisfied.  The CIC Excess Policy does not provide coverage for any loss not covered by the VFIC CGL Policy.

**30.**     Separately, insurance coverage under the CIC Excess Policy is also excluded pursuant to the *Underlying Insurance Coverage Limitation Endorsement*, the *Contractors Limitation Endorsement – Excess and Umbrella Liability*, and the *Construction Management Errors and Omissions Exclusion Endorsement.*

**31.**     Accordingly, VFIC and CIC are entitled to and respectfully request a declaratory judgment that the CIC Excess Policy does not afford insurance coverage for the claims for damages in the Consolidated Lawsuits against Magnolia and CenterPoint.

**32.**     On these grounds, VFIC and CIC are entitled to and respectfully request a declaratory judgment that CIC has no duty to defend or indemnify Magnolia or CenterPoint for the claims for damages in the Consolidated Lawsuits.

## COUNT III

**For A Declaration That CenterPoint Is Not An Additional Insured.**

**33.**     VFIC and CIC re-allege and incorporate by reference their previous allegations.

**34.**     The VFIC CGL Policy does not afford insurance coverage to CenterPoint because the claims for damages asserted in the Consolidated Lawsuits do not arise out of Magnolia's work.

**35.**     Further, the VFIC CGL Policy does not afford insurance coverage to CenterPoint on the grounds that coverage is otherwise excluded under the VFIC CGL Policy.  Likewise, the VFIC CGL Policy does not afford insurance coverage to CenterPoint for the claims for damages

in the Consolidated Lawsuits because they arise out of the rendering of, or the failure to render, professional services as set forth in the *Blanket Additional Insured* Endorsement.

36.    The CIC Excess Policy does not afford insurance coverage where, as here, the VFIC CGL Policy does not afford insurance coverage.    Further, insurance coverage under the CIC Excess Policy is excluded on multiple, independent grounds.

37.    On these grounds, VFIC and CIC are entitled to and respectfully request a declaratory judgment that CenterPoint is not afforded insurance coverage as an additional insured, or otherwise, for the claims for damages in the Consolidated Lawsuits against Magnolia and CenterPoint.

## COUNT IV
**For  A Declaration That The Contractual Obligations In The CenterPoint Contract Are Null, Void And Unenforceable Pursuant To The LAIA.**

38.    VFIC and CIC re-allege and incorporate by reference their previous allegations.

39.    Pursuant to the express provisions of Louisiana Revised Statute § 9:2780.1 and Louisiana jurisprudence,[6] the defense, indemnity and additional insured obligations in the CenterPoint Contract are null, void and unenforceable as a matter of law.

40.    The provisions of the CenterPoint Contract requiring Magnolia to indemnify and procure liability insurance covering the acts and omissions of CenterPoint are null, void and unenforceable *ab initio*.

41.    Accordingly, VFIC and CIC are entitled to and respectfully request a declaratory judgment that the contractual defense, indemnity and additional insured provisions of the CenterPoint Contract are null, void and unenforceable pursuant to Louisiana Revised Statute § 9:2780.1.

---

[6] *See Atl. Specialty Ins. v. Phillips 66 Co.*, 790 F. App'x 598, 600 (5th Cir. 2019); and *Salathe v. Parish of Jefferson Through Department of Sewerage*, 300 So. 3d 460 (La. Ct. App. 5th Cir. 2020), cert. den., 303 So. 3d 642 (La. 2020).

42.     On these grounds, VFIC and CIC are entitled to and respectfully request a declaratory judgment that VFIC and CIC have no duty to defend or indemnify CenterPoint for the claims for damages in the Consolidated Lawsuits.

## COUNT V

**For A Money Judgment For Reimbursement Of Defense Costs and Fees Rendered Against Magnolia And CenterPoint.**

43.     VFIC and CIC re-allege and incorporate by reference their previous allegations.

44.     Subject to a complete Reservation of Rights, including the right to withdraw the defense and seek reimbursement of defense costs under applicable law, VFIC has provided a defense to both CenterPoint and Magnolia for the Consolidated Lawsuits.

45.     Despite the lack of insurance coverage and the absolute nullity of the CenterPoint Contract, VFIC continues to incur disputed defense costs and fees.  To date, VFIC has paid and is in the process of paying more than $1,400,000 in defense costs and fees, and these amounts continue to accrue.

46.     VFIC requests that the Court render a money judgment in favor of VFIC for recovery of all amounts paid, or that will be paid, in defense costs and fees associated with the Consolidated Lawsuits.

47.     CenterPoint and Magnolia would be unjustly enriched if VFIC is not reimbursed for defense costs and fees incurred in defending the Consolidated Lawsuits.

48.     VFIC and CIC are entitled to and respectfully request a judicial declaration that CenterPoint and Magnolia are each obligated to reimburse VFIC for all defense costs it has paid on behalf of each entity in connection with the Consolidated Lawsuits.

## OTHER COVERAGE DEFENSES

**49.** VFIC and CIC further plead the terms, conditions, provisions, and limitations contained in the Policies, as if copied herein *in extenso*.

**50.** Nothing in this Complaint should be construed as a waiver by VFIC or CIC of any coverage defenses under the Policies or any rights and remedies available under applicable law, and VFIC and CIC reserve the right to raise all other terms and conditions of the Policies as defenses to coverage as appropriate.

**WHEREFORE**, Complainants, Vally Forge Insurance Company and The Continental Insurance Company pray that Defendants be cited to appear and answer the Complaint herein within the delays fixed by law and that after due proceedings are had, that there be judgment in their favor, declaring that:

A. Insurance coverage is excluded under VFIC Commercial General Liability Policy No. 5093259512 for the claims for damages in the Consolidated Lawsuits against Magnolia River Services, Inc. and CenterPoint Energy Resources Corporation;

B. Vally Forge Insurance Company has no duty to defend or indemnify Magnolia River Services, Inc., or CenterPoint Energy Resources Corporation for the claims for damages in the Consolidated Lawsuits;

C. The CIC Paramount Excess and Umbrella Policy No. 602054257 does not afford insurance coverage for the claims for damages in the Consolidated Lawsuits against Magnolia River Services, Inc. or CenterPoint Energy Resources Corporation;

D. The Continental Insurance Company has no duty to defend or indemnify Magnolia River Services, Inc. or CenterPoint Energy Resources Corporation for the claims for damages in the Consolidated Lawsuits;

E. CenterPoint Energy Resources Corporation is not afforded insurance coverage as an additional insured, or otherwise, for the claims for damages in the Consolidated Lawsuits against Magnolia River Services, Inc. and/or CenterPoint Energy Resources Corporation;

**F.**  Louisiana Revised Statute § 9:2780.1 renders the defense, indemnity and additional insured obligations set forth in the CenterPoint Contract null, void and unenforceable as a matter of law;

**G.**  Magnolia River Services, Inc. and CenterPoint Energy Resources Corporation are each obligated to reimburse Vally Forge Insurance Company for all defense costs and fees they have paid on behalf of each entity in connection with the Consolidated Lawsuits, and a money judgment is to be issued against those Defendants in that amount; and

**H.**  For all other general and equitable relief as is reasonable.

Respectfully submitted,

**FRILOT, LLC**

___*/s/ Kathleen P. Rice*___
**DANICA B. DENNY (#27376)**
**KATHLEEN P. RICE (#31291)**
**PHOEBE A. HATHORN (#35811)**
**PATRICK J. SCHEPENS (#33240)**
**DANIEL E. SCHWANK (#39333)**
**LEON A. SANFORD (#41400)**
1100 Poydras Street, Suite 3700
New Orleans, LA 70163-3700
Telephone: (504) 599-8000
Facsimile: (504) 599-8100
E-mail:
ddenny@frilot.com
krice@frilot.com
phathorn@frilot.com
pschepens@frilot.com
dschwank@frilot.com
lsanford@frilot.com
*Attorneys for Valley Forge Insurance Company and The Continental Insurance Company*