UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**VALLEY FORGE INSURANCE CO ET AL**    CASE NO.  6:25-CV-00167

**VERSUS**                                                    **JUDGE JAMES D. CAIN, JR.**

**MAGNOLIA  RIVER  SERVICES  INC  ET**  **MAGISTRATE JUDGE DAVID J. AYO**
**AL**

## MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment and Judicial Declaration [doc. 58] filed by plaintiffs Valley Forge Insurance Company ("VFIC") and Continental Insurance Company ("CIC"). Defendant CenterPoint Energy Resources Corporation ("CENTERPOINT") and intervenors Arilda and Gilbert Viator and Anthony and Emily Zamora oppose the motion. Docs. 82, 84.

### I.
### BACKGROUND

This declaratory action seeks to determine coverage obligations of VFIC and CIC in connection with five consolidated lawsuits arising from a fire and explosion that occurred on July 29, 2021. On that date, according to CenterPoint, contractors including Magnolia were working on a pipeline project for CenterPoint when gas leaked from a service pipe damaged by directional boring equipment and caused an explosion at a nearby building. Doc. 19, att. 1, pp. 4–5. Five groups of plaintiffs filed suit, alleging that the negligence of defendants (including CenterPoint and Magnolia, among others) caused their

damages. *Id.*; *see* doc. 1, ¶ 19. Those suits are now consolidated and pending in the 16th Judicial District Court. *See* doc. 14, att. 3.

VFIC issued the VFIC CGL Policy to Magnolia for a one-year period beginning on April 1, 2021, with liability limits of $1,000,000 per occurrence. Doc. 1, ¶ 20. CIC issued the CIC Excess Policy to Magnolia River for the same period, with liability limits of $10,000,000 per incident over a retention amount of $10,000 for each claim.[1] *Id.* at ¶ 21. CenterPoint issued a demand to Magnolia and its insurers for defense and indemnity pursuant to CenterPoint's contract with Magnolia. *Id.* at ¶ 27. VFIC and CIC then issued a reservation of rights to CenterPoint and VFIC agreed to participate in its defense subject to that reservation. *Id.* at ¶¶ 28–29.

On January 27, 2025, plaintiffs in the state court suit filed an unopposed motion for leave to file a second amended and supplemental petition. Doc. 65, att. 4. There they named VFIC and CIC as defendants for the first time under the Louisiana Direct Action Statute. *Id.* VFIC and CIC filed this declaratory action on February 11, 2025, seeking declarations that (1) insurance coverage for the claims asserted in the consolidated lawsuits is expressly excluded under the VFIC CGL Policy; (2) there is no coverage under the CIC Excess policy, which only affords coverage for losses covered by the VFIC CGL Policy; (3) CenterPoint is not covered as an additional insured under either policy; and (4) the

---

[1] For this period, Magnolia was also insured under an Architects and Engineers Professional Liability Policy issued by Evanston Insurance Company ("Evanston") with liability limits of $5,000,000 per claim and an Excess Professional Liability Policy issued by RSUI Insurance Company with liability limits of $5,000,000 per claim. *Id.* at ¶¶ 22–23. In relation to the suits arising from the July 2021 explosion, Magnolia sought defense from both VFIC and Evanston. *Id.* at ¶ 22. Evanston retained counsel to represent Magnolia in the consolidated lawsuits. *Id.* at ¶ 24. VFIC and CIC issued a reservation of rights and VFIC agreed to participate in Magnolia's defense, subject to that reservation. *Id.* at ¶¶ 25–26. Meanwhile,

contractual obligations in the CenterPoint contract requiring Magnolia to indemnify and procure liability insurance covering the acts and omissions of CenterPoint are null, void, and unenforceable. VFIC and CIC also seek a money judgment reimbursing them for the disputed defense fees and costs they have rendered in association with the consolidated lawsuits. Doc. 1. The remaining plaintiffs from the state court suit intervened in this matter. Doc. 44.

The state court proceedings are set for jury trial on April 6, 2026. Doc. 65, atts. 9–11. VFIC and CIC have moved for summary judgment in this matter, seeking a declaration from this court that the contractual defense, indemnity, and additional insured obligations imposed upon Magnolia by CenterPoint are null, void, and unenforceable under the Louisiana (Construction) Anti-Indemnity Act ("LCAIA"), La. R.S. § 9:2780.1. CenterPoint and intervenors (collectively, "opponents") have filed separate oppositions, with intervenors adopting the arguments raised in CenterPoint's response. Docs. 82, 84. They maintain that (1) the LCAIA has no application because CenterPoint's contract with Magnolia is not a construction contract; (2) VFIC and CIC have waived their right to disclaim CenterPoint's status by waiting two years to raise the issue; (3) summary judgment is premature until there is a finding of fault; or, in the alternative, (4) the defense and indemnity provisions of the CenterPoint contract do not violate the LCAIA. *Id.*

## II.
## LAW & APPLICATION

### A. Summary Judgment Standard

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact

exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## B. Application

Subject to certain exceptions, the LCAIA invalidates "any provision, clause, covenant, or agreement contained in, collateral to, or affecting a . . . construction contract which purports to indemnify, defend, or hold harmless . . . the indemnitee" from liability arising from the indemnitee's own negligence or the acts or omissions of a third party over whom the indemnitor has no control. La. R.S. § 9:2780.1(B). It also prohibits contractual provisions that "purport[] to require an indemnitor to procure liability insurance covering the acts or omissions or both of the indemnitee, its employees or agents." *Id.* at § 9:2780.1(C).

### 1. Construction contract

Opponents argue that VFIC and CIC cannot avoid their indemnity obligations under these provisions, because the Magnolia-CenterPoint contract is not a construction contract or collateral to such an agreement. Under the LCAIA, a construction contract is defined as:

> [A]ny agreement for the design, construction, alteration, renovation, repair, or maintenance of a building, structure, highway, road, bridge, water line, sewer line, oil line, gas line, appurtenance, or other improvement to real property, or repair or maintenance of a highway, road, or bridge, including any moving, demolition, or excavation, except that no deed, lease, easement, license, or other instrument granting an interest in or the right to possess property will be deemed to be a construction contract even if the instrument includes the right to design, construct, alter, renovate, repair, or maintain improvements on such real property.

*Id.* at § 9:2780.1(A)(2)(a).

Page 5 of 12

The Magnolia-CenterPoint contract provides that Magnolia will perform pipeline inspection services for CenterPoint. Doc. 7. The inspector "observe[s] and document[s] the construction activities of the Construction Contractor" and "works with the Construction Crew Foreman to resolve any issues related to the project that may affect job flow and service to the Utility Client's customers." *Id.* at 5. Although "[t]he Inspector's role . . . does not include managing or directing construction crews," Magnolia bears the "entire responsibility for the correctness and adequacy of [its] engineering, design, workmanship, material, and all other services." *Id.* at 5, 31. This serves Magnolia's obligation to create "detailed drawings and pictures of all tie-ins" and measurements enabling future facility location. *Id.* at 10. Magnolia is also responsible for recommending "repairs, removal, or replacement of pipeline or pipeline components that fail to meet project specifications." *Id.* at 2. The contract is labeled as one for inspection services, but Magnolia's obligations encompass the design and repair work falling under construction activities as defined by the LCAIA. Accordingly, the LCAIA applies and may be used to void provisions within the Magnolia-CenterPoint contract.

## 2. Waiver

Opponents next argue that VFIC and CIC waived their policy defenses after three years of participation in the litigation. VFIC and CIC maintain that the LCAIA renders the challenged provisions a nullity, and that nullity defenses cannot be waived. This is because, under Louisiana law, "[p]ersons may not by their juridical acts derogate from laws enacted for the protection of the public interest" and "[a]ny act in derogation of such laws is an absolute nullity." La. Civ. Code art. 7.

VFIC and CIC point to *Gaspard v. Offshore Crane & Equipment, Inc.*, 1998 WL 388597 (E.D. La. Jul. 8, 1998), involving the LCAIA's sister statute, the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"). There the court applied a two-part inquiry created by the Louisiana Supreme Court to determine "whether a law is imperative (applies regardless of the intent of the parties and cannot be waived) or suppletive (applies only if those affected by it have not excluded its application)." *Id.* at *4 (citing *E.L. Burns Co., Inc. v. Cashio*, 302 So.2d 297 (La. 1974)). To this end the court looked to the wording of the statute, asking whether "the statute . . . states its command in unequivocal terms," and then asked whether "the interest the rule was designed to protect . . . is vital to the public order." *Id.* (internal quotations omitted). "It has been suggested that proper technique requires consideration of both factors: the literal wording of the rule and the interest the rule was designed to protect." *Taranto v. La. Citizens Prop. Ins. Corp.*, 62 So.3d 721, 733 (La. 2011) (quoting *E.L. Burns Co., Inc.*, 302 So.2d at 301).

The Eastern District of Louisiana determined that the LOAIA's anti-indemnity provisions satisfied both criteria, citing emphatic language from the introductory paragraph that declared such agreements to be "null and void and against public policy of the State of Louisiana." *Gaspard*, 1998 WL 388597 at *4. With respect to the law's purpose, it observed that the law was enacted due to "inequitable bargaining power between large oil companies . . . and smaller, more marginally operated contractors," which could be exploited when contractors were "economically coerced into signing such indemnification agreements for fear of losing the large company's business." *Id.* Further, "[a]n underlying

rationale was presumably the assumption that the large companies were more able to absorb liability for their own negligence than could the small contractors." *Id.*

The LCAIA's anti-indemnity provision declares that violative clauses are "contrary to the public policy of this state" and "null, void, and unenforceable." La. R.S. § 9:2780.1(B). Clauses violating the insurance procurement provision are also specifically declared "null, void, and unenforceable." *Id.* at § 9:2780.1(C). The statutory text thus provides a clear expression of the legislative will that these provisions be rendered unenforceable in any construction contract. Meanwhile, the LCAIA arises from the same public policy concerns as the LOIA—both are "prompted by service providers who would otherwise be excluded from contracts, unless they absorbed the liability costs of the project owners." *Ladner v. Ochsner Baptist Med. Ctr.*, 414 So.3d 572, 590 (La. Ct. App. 4th Cir. 2024) (quoting *2700 Bohn Motor, LLC v. F.H. Myers Constr. Corp.*, 338 So.3d 500, 507 (La. Ct. App. 4th Cir. 2022)). The legislature's decision to act in defense of such providers signals the importance of these provisions in both leveling the field in contract negotiations as well as ensuring that the proper party stands to answer for a construction accident. Accordingly, both prongs of the *E.L. Burns* test support a finding that the applicable provisions of the LCAIA are imperative and cannot be waived.

### 3. Validity of contractual provisions and prematurity

The LCAIA invalidates "any provision, clause, covenant, or agreement contained in, collateral to, or affecting a . . . construction contract which purports to indemnify, defend, or hold harmless . . . the indemnitee" from liability arising from the indemnitee's own negligence or the acts or omissions of a third party over whom the indemnitor has no

control.[2] La. R.S. § 9:2780.1(B). The LCAIA does not, however, "prevent an indemnitor from indemnifying an indemnitee for the *indemnitor's* own negligence or intentional acts or omissions (or those of an agent or employee *of the indemnitor* or a third party over which the indemnitor *has control*)." *Ruiz v. Weeks Marine, Inc.*, 2025 WL 3088900, at \*7 (E.D. La. Oct. 23, 2025) (citing La. R.S. § 9:2780.1(B)) (emphasis in original); *see also 535 Iberville, LLC v. F.H. Myers Constr. Copr.*, 2025 WL 522701, at \*4 (E.D. La. Feb. 18, 2025) ("To violate the [LCAIA], the subcontract would have to require [the indemnitor] to defend [the indemnitee] from the consequences of [the indemnitee's] actions.").

The LCAIA also prohibits certain insurance procurement requirements in construction contracts:

> Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to require an indemnitor to procure liability insurance covering the acts or omissions or both of the indemnitee, its employees or agents, or the acts or omissions of a third party over whom the indemnitor has no control is null, void, and unenforceable. However, nothing in this Section shall be construed to prevent the indemnitee from requiring the indemnitor to provide proof of insurance for obligations covered by the contract.

La. R.S. § 9:2780.1(C). Its provisions, however, do not apply against:

> (1) Any clause in a construction contract containing the indemnitor's promise to indemnify, defend, or hold harmless the indemnitee or an agent or employee of the indemnitee if the contract also requires the indemnitor to obtain insurance to insure the obligation to indemnify, defend, or hold harmless and there is evidence that the indemnitor recovered the cost of the required insurance in the contract price. However, the indemnitor's liability under such clause shall be limited to the amount of the proceeds that were

---

[2] Under La. R.S. § 9:2780.1(I)(1), an exception applies where the contract also requires the indemnitor to obtain insurance covering this obligation "**and** there is evidence that the indemnitor recovered the cost of the required insurance in the contract price."

payable under the insurance policy or policies that the indemnitor was required to obtain.

(2) Any clause in a construction contract that requires the indemnitor to procure insurance or name the indemnitee as an additional insured on the indemnitor's policy of insurance, but only to the extent that such additional insurance coverage provides coverage for liability due to an obligation to indemnify, defend, or hold harmless authorized pursuant to Paragraph (1) of this Subsection, provided that such insurance coverage is provided only when the indemnitor is at least partially at fault or otherwise liable for damages ex delicto or quasi ex delicto.

*Id.* at § 9:2780.1(I).

The contract in this matter requires:

TO THE FULLEST EXTENT PERMITTED BY LAW, Vendor [Magnolia] shall defend, indemnify, and hold harmless COMPANY [CenterPoint], ITS AFFILIATES AND EACH OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS (THE "Company-INDEMNIFIED PARTIES") from and against ANY and all DAMAGES ("DAMAGES" MEANS THE AMOUNT OF ANY ACTUAL LIABILITY, LOSS, EXPENSE, CLAIM, AWARD OR JUDGMENT INCURRED OR SUFFERED BY AN INDEMNIFIED PERSON ARISING OUT OF OR RESULTING FROM THE INDEMNIFIED MATTER, WHETHER ATTRIBUTABLE TO PERSONAL INJURY OR DEATH, PROPERTY DAMAGE, CONTRACT CLAIMS (INCLUDING CONTRACTUAL INDEMNITY CLAIMS), TORTS OR OTHERWISE, INCLUDING COSTS OF ENFORCEMENT OF THE INDEMNITY AND (1) REASONABLE FEES AND EXPENSES OF ATTORNEYS, CONSULTANTS, ACCOUNTANTS OR OTHER AGENTS AND EXPERTS REASONABLY INCIDENT TO MATTERS INDEMNIFIED AGAINST, AND (2) THE COSTS OF INVESTIGATION AND/OR MONITORING OF SUCH MATTERS) INCURRED OR SUFFERED BY [CENTERPOINT] WITH RESPECT TO BODILY INJURY OR DEATH OF ANY PERSON, OR LOSS OF, DAMAGE TO OR DESTRUCTION OF REAL OR PERSONAL PROPERTY IN ANY WAY OCCURRING, INCIDENT TO, ARISING OUT OF OR IN CONNECTION WITH ANY WORK PERFORMED BY [MAGNOLIA] HEREUNDER OR OCCURRING, INCIDENT TO, ARISING OUT OF OR IN CONNECTION WITH THE PRESENCE OF [MAGNOLIA] AND [MAGNOLIA] PERSONNEL ON THE JOBSITE OR ON [CENTERPOINT]'S PREMISES, IN EACH CASE **TO THE EXTENT SUCH BODILY INJURY, DEATH OR DAMAGE IS CAUSED BY**

**THE SOLE, JOINT, CONCURRENT, CONTRIBUTING, OR COMPARATIVE NEGLIGENCE OR OTHER LEGAL FAULT OF [MAGNOLIA] OR [MAGNOLIA] PERSONNEL.**

Doc. 7, pp. 48–49 (§ 11.1.1) (emphasis added). The contract also contains several clauses pertaining to Magnolia's insurance requirements, including that it "obtain, maintain, and pay for such insurance as may be required by the Contract and to effect the provisions of the Indemnification section herein." *Id.* at p. 44 (§ 10.1.1). This insurance must be maintained "at [Magnolia's] sole expense." *Id.* at p. 44 (§ 10.3.1). CenterPoint must be named as "additional insured[] for liability arising out of the Work, with coverage **not limited to** liability caused by [Magnolia] or [Magnolia's] fault, and providing coverage for the Additional Insureds' fault or vicarious liability . . . ." *Id.* at p. 46 (§ 10.4.1) (emphasis added).

In reliance on *Ladner*, supra, and this court's opinion in *Greer v. Sauer Construction, LLC*, 2025 WL 420544 (W.D. La. Feb. 6, 2025), opponents argue that the court should not reach a decision on the validity of the indemnity or insurance procurement provisions until an adjudication of CenterPoint's negligence. VFIC and CIC maintain that the declaratory action is ripe for determination now, because the contract unambiguously violates subsections (B) and (C) of the LCAIA. To this end they note that Magnolia's indemnification obligations extend to losses and liability arising from its "joint, concurrent, contributing, or comparative negligence," i.e., potentially involving claims when CenterPoint is also at fault. Additionally, the insurance procurement provisions require that such insurance be obtained at Magnolia's sole expense and covering CenterPoint's fault or vicarious liability.

But the contract also limits Magnolia's indemnification obligations "to the fullest extent permitted by law," which would include the LCAIA. The indemnity provision is therefore valid to the extent it pertains to losses or liability not arising from CenterPoint's fault. And the insurance procurement provisions are valid as they relate to this indemnity obligation, "provided that such insurance coverage is provided only when the indemnitor [Magnolia] is at least partially at fault . . . ." La. R.S. § 9:2780.1(I)(2). Because these issues have not yet been determined, the court agrees that summary judgment is premature.

# III.
## CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment and Judicial Declaration [doc. 58] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 9th day of January, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**